## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, 80 F Street N.W., Washington, D.C. 20001, <br><br> and <br><br> AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, 1625 L Street, N.W., Washington, D.C. 20036, <br><br><br> Plaintiffs, <br><br> v. <br><br><br> DONALD J. TRUMP, in his official capacity as President of the United States, 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20500, <br><br> CHARLES EZELL, in his official capacity as Acting Director of the U.S. Office of Personnel Management, 1900 E Street, N.W. Washington, D.C. 20415, <br><br> and <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT 1900 E Street, N.W. Washington, D.C. 20415, <br><br> Defendants. | Case No. 1:25-cv-00264 <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1. This action seeks injunctive and declaratory relief with respect to the Executive Order issued by President Donald J. Trump on January 20, 2025, entitled "Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce" (hereinafter "Schedule F Order").

2. Our nation's career civil servants are the backbone of our federal government, contributing their impartial expertise, experience, and hard work to further their agencies' missions and serve the American people across presidential administrations.

3. For more than 140 years Congress has recognized the importance of career civil servants, replacing the patronage system for government jobs with the competitive civil service in 1883 by passing the Pendleton Act and strengthening civil service protections over the subsequent decades.

4. Despite this longstanding recognition of the importance of our professional civil service and protections against its politicization, the recently issued Schedule F Order announces President Trump's intent to reclassify many career civil servants into a new category of federal employees and strip away their civil service protections so that they can be more easily fired. This scheme seeks to put politics over professionalism, contrary to the laws and values that have defined our career civil service for more than a century.

5. Acknowledging that this Order violates regulations that both (1) set limits on the positions that can be exempted from civil service protections and (2) guarantee that involuntarily reclassified employees are given advance notice and retain their civil service protections, the Schedule F Order purports to render certain provisions of these regulations "inoperative and without effect." Schedule F Order § 4.

6. These binding federal regulations were lawfully promulgated by the U.S. Office of Personnel Management ("OPM") pursuant to the notice-and-comment process required by the Administrative Procedure Act, 5 U.S.C. § 553. This process ensures that interested members of the public have the opportunity to share their views on proposed regulations and that the federal government duly considers and responds to their views. OPM's Final Rule promulgating these regulations, "Upholding Civil Service Protections and Merit System Principles," became effective on May 9, 2024.

7. Plaintiffs—like all members of the public—are entitled to notice and the opportunity to be heard regarding the government's changes to the regulations protecting the rights of career civil servants before any changes are made. Indeed, the Plaintiffs in this case exercised that very right when they commented on OPM's proposed rule. However, the Schedule F Order instructs that OPM treat certain of those regulatory provisions as inoperative immediately without notice and comment in violation of the Administrative Procedure Act. Its purported rescission of these regulations should be enjoined so that Plaintiffs and the public may make their voices heard through the notice and comment process.

## Jurisdiction

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

9. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

## Venue

10. The District of Columbia is a proper venue for this action under 28 U.S.C. § 1391(e) because plaintiffs AFGE and AFSCME are headquartered here, AFGE and AFSCME represent federal employees here, and because Defendants' principal offices are located here.

## Parties

11. The American Federation of Government Employees, AFL-CIO ("AFGE") is a labor organization and unincorporated association headquartered at 80 F Street N.W., Washington, D.C. 20001. AFGE, the largest federal union, represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States.

12. AFGE members include nurses caring for our nation's veterans, border patrol agents securing our borders, correctional officers maintaining safety in federal facilities, scientists conducting critical research, health care workers serving on military bases, civilian employees in the Department of Defense supporting our military personnel and their families, and employees of the Social Security Administration making sure retirees receive the benefits they have earned.

13. AFGE was founded in 1932 by federal employees seeking to create a right to fair employment and pay during the Great Depression. As the union grew, it advocated for and secured numerous victories for career civil servants, including the passage of the Civil Service Reform Act in 1978.

14. AFGE is dedicated to fighting for dignity, safety, and fairness on the job for its members, and promoting efficiency and the improvement of government service so that government can more effectively serve the American people.

15. The American Federation of State, County & Municipal Employees, AFL-CIO ("AFSCME") is a national labor organization and unincorporated membership association headquartered at 1625 L Street, N.W., Washington, D.C. 20036. AFSCME is the largest trade union of public employees in the United States, with around 1.4 million members organized into approximately 3,400 local unions, 58 councils and affiliates in 46 states, the District of Columbia and Puerto Rico. AFSCME, through its subordinate body Council 20 and constituent local unions,

represents federal civilian employees in agencies and departments across the federal government.

16.　AFSCME was founded in 1932 by civil servants seeking to combat state efforts to replace a competitive civil service system with political patronage, united by a simple idea: that a professional civil service is essential to a strong democracy, and public service should be delivered by individuals dedicated to serving their communities, not those who have close connections to politicians. This idea has sustained AFSCME through nearly nine decades, as the union has succeeded in its efforts to pass or strengthen civil service laws across the United States.

17.　AFSCME members include nurses, corrections officers, child care providers, emergency medical technicians, sanitation workers, school bus drivers, civil engineers, policy analysts, and more, all with one thing in common: a dedication to making our communities stronger, healthier, and safer. Its members working for the federal government make our communities stronger, healthier, and safer by working to ensure aviation safety at the Federal Aviation Administration, criminal justice through the Department of Justice, and more.

18.　AFGE and AFSCME bring this action on behalf of themselves and their members, whose rights are being violated by the Schedule F Order's unlawful rescission without notice and comment of a legislative rule duly promulgated by OPM providing civil service protections.

19.　Defendant Donald J. Trump is the President of the United States. He is sued solely in his official capacity. In that capacity, he issued the Schedule F Order.

20.　 Defendant U.S. Office of Personnel Management ("OPM") is a federal agency within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1), headquartered in Washington, D.C. After going through the notice-and-comment process required under the Administrative Procedure Act, OPM promulgated the Final Rule that the Schedule F Order purports to partially hold inoperative. OPM has been charged by the President with

implementing the challenged executive order. Schedule F Order, §§ 2-5.

21. Defendant Charles Ezell is the Acting Director of OPM ("Director"), located in Washington, D.C., who has been charged by the President with implementing the challenged executive order. Schedule F Order, §§ 2-5. He is sued solely in his official capacity.

**Factual Background**

I. **The Federal Civil Service and Accompanying Employment Protections**

22. Recognizing the harms resulting from the patronage or "spoils system," whereby Federal employees were hired and fired based on who they supported politically, Congress ended this system in 1883 by enacting the Pendleton Civil Service Act. 22 Stat. 403 (1883); *see* 89 Fed. Reg. 24982, 24984 (Apr. 9, 2024). The Pendleton Act created the competitive civil service and required the government to hire employees using "open, competitive examinations" that determined their "relative capacity and fitness . . . to discharge the duties of the service." 22 Stat. 403-04.

23. Congress built on the Pendleton Act over time, adding additional protections for civil servants to ensure that any removals from service were based on merit and ensuring that civil servants received notice and an opportunity to respond to proposed removals. *See, e.g.*, Lloyd-La Follette Act of 1912, 37 Stat. 555 (1912).

24. Today's system of civil service protections was largely established by the Civil Service Reform Act of 1978 ("CSRA"), "the most comprehensive reform of the federal work force since passage of the Pendleton Act in 1883." S. Rep. No. 95-969 at 1 (1978); *see also* 89 Fed. Reg. 24982, 24985.

25. Today, most executive branch employees are part of the competitive service. 89 Fed. Reg. 24988. Some employees are expressly "excepted" from the competitive service by

statute, executive order, or regulation, and are therefore not subject to the competitive hiring process. *See* 5 C.F.R. parts 213, 302. And certain high-level executives within the executive branch are placed within the Senior Executive Service. *See* 5 U.S.C. §§ 3132-3136.

26. The President is permitted to issue "necessary exceptions of positions from the competitive service" when warranted by "conditions of good administration." 5 U.S.C. § 3302.

27. However, the CSRA "make[s] it clear . . . that competitive service [is] the norm rather than the exception." *NTEU v. Horner*, 854 F.2d 490, 495 (D.C. Cir. 1988) (internal quotation marks omitted).

28. Most non-probationary employees in the competitive service and excepted service are guaranteed civil service protections if their agencies take adverse actions, including removals or suspensions longer than 14 days, against them. 5 U.S.C. §§ 7511-12. Such adverse actions may be taken only "for such cause as will promote the efficiency of the service," and these employees are guaranteed due process rights including notice, the opportunity to respond, and to appeal the adverse action. 5 U.S.C. § 7513.

29. Employees whose positions are "of a confidential, policy-determining, policy-making or policy-advocating character" and have been excepted from the competitive service are excluded from the civil service protections codified at 5 U.S.C. §§ 7511-15, 5 U.S.C. § 7511(b)(2), and those codified at 5 U.S.C. § 2302, 5 U.S.C. § 2302(a)(2)(B). Such a position is "of a character exclusively associated with a noncareer political appointment that is identified by its close working relationship with the President, head of an agency, or other key appointed officials who are responsible for furthering the goals and policies of the President and the Administration, and that carries no expectation of continued employment beyond the presidential administration during which the appointment occurred." 5 C.F.R. § 210.102(b)(3).

**II.     OPM's "Upholding Civil Service Protections and Merit System Principles" Final Rule**

30.     OPM issued a Proposed Rule on September 18, 2023 entitled "Upholding Civil Service Protections and Merit System Principles," that proposed new mandatory procedures for moving positions from the competitive service to the excepted service, guaranteed that employees so moved would retain their civil service protections, and set limits on what types of positions could be excepted from civil service protections due to their "confidential, policy-determining, policy-making, or policy-advocating" roles.

31.     OPM received over 4000 comments during the public comment period from individuals (including current and former civil servants), organizations, and Federal agencies. 89 Fed. Reg. 24982, 24984.

32.     AFGE and AFSCME submitted comments supporting the proposed rule. AFGE, Comment Letter (Nov. 17, 2023), Rulemaking Docket OPM-2023-0013-0001, Comment 2640, available at https://www.regulations.gov/comment/OPM-2023-0013-2640; NTEU et al., Comment Letter (Nov. 1, 2023), Rulemaking Docket OPM-2023-0013-0001, Comment 41, available at https://www.regulations.gov/comment/OPM-2023-0013-0041 (AFSCME joining 13 other unions in support of the rule).

33.     OPM issued its Final Rule entitled "Upholding Civil Service Protections and Merit System Principles" on April 9, 2024. 89 Fed. Reg. 24982. This legislative rule became effective on May 9, 2024. *Id.*

34.     The Final Rule published in the Federal Register summarized and addressed public comments over the course of sixty-one pages. 89 Fed. Reg. 24982, 24984-25044.

35.     The Final Rule discussed and agreed with comments submitted by AFGE and AFSCME. For example, OPM stated it "agrees with the contention regarding property rights and

the expected benefit of this rule" raised in the comment letter submitted by a coalition of unions including AFSCME. 89 Fed. Reg. 24982, 25012. And after noting commenters' concerns about the breadth of Schedule F, including AFGE's contention that "the plain purpose of Schedule F was to create an exception so broad, it swallowed the rule of apolitical, merit based Federal employment and rendered meaningless the protections afforded to career Federal employees by the CSRA," OPM explained that it "shares some of these concerns." *Id.* at 24993.

36. Among other findings, OPM's Final Rule was based on its "determination that injecting politicization into the nonpartisan career service . . . runs counter to merit system principles and would not only harm government employees, agencies, and services, but also the American people that rely on them." *Id.* at 24995.

37. The Final Rule amended 5 C.F.R. part 302 to establish required procedures for moving individuals or positions from the competitive service to the excepted service, from one category of excepted service to another, or from a position with civil service protections to a position lacking those protections. These procedures, contained in Subpart F, set forth requirements that agencies must satisfy to make such a move, mandate that affected employees be given 30 days' notice, and grant certain appeal rights to these employees.

38. The Final Rule also added new definitions to 5 C.F.R. § 210.102, defining "[c]onfidential, policy-determining, policy-making, or policy-advocating" and "[c]onfidential or policy determining" as applying only to certain noncareer political appointees. 5 C.F.R. § 210.102(b)(3), (4).

39. Furthermore, the Final Rule amended regulations to provide that civil servants involuntarily moved to a new classification retain their accrued civil service protections. 5 C.F.R. §§ 752.201, 752.401.

### III. President Trump's Schedule F Order

40. On January 20, 2025, President Trump signed the Schedule F Order, seeking to reclassify certain career federal civil servants to strip them of their civil service protections in order to more easily terminate them.

41. The Schedule F Order reinstated Executive Order 13957, "Creating Schedule F in the Excepted Service," 85 Fed. Reg. 67631 (October 26, 2020), subject to certain amendments, including renaming the new excepted service schedule "Schedule Policy/Career." Schedule F Order §§ 2-3.

42. The Schedule F Order makes clear on its face that it is intended to make it easier to fire career civil servants: it claims that "accountability is sorely lacking today" and discusses whether supervisors "are confident that they can remove an employee." Schedule F Order § 1.

43. Any doubt about the motivations behind the Schedule F Order is removed by listening to its proponents. For example, James Sherk has advocated for reinstating Executive Order 13957 and "hold[ing] intransigent bureaucrats accountable" in an op-ed entitled "The President Needs the Power to Fire Bureaucrats." James Sherk, "The President Needs the Power to Fire Bureaucrats," *Wall Street Journal* (Aug. 8, 2022), https://www.wsj.com/articles/the-power-to-fire-insubordinate-bureaucrats-schedule-f-executive-order-trump-deborah-birx-at-will-civil-service-removal-appeals-11659989383. Sherk, who as a White House special assistant for domestic policy was central to the issuance of Executive Order 13957, recently returned to the White House to serve in the White House Domestic Policy Counsel. Robin Bravender, "Trump hires fed-firing mastermind," POLITICO (Jan. 18, 2025), https://www.politico.com/news/2025/01/18/trump-hires-fed-firing-mastermind-00199154.

44. As OPM has recognized, the reclassification of civil servants pursuant to Executive

10

Order 13957 was "designed to be broad and numerically unlimited." 89 Fed. Reg. 24982, 24990.

45. The Schedule F Order instructs agencies and OPM to identify career civil servant "positions of a confidential, policy-making, or policy-advocating character" to be placed in a new schedule of the excepted service. Schedule F Order §§ 2-3 (reinstating Executive Order 13957 §§ 3, 5 in relevant part).

46. By moving these positions to the excepted service, the Schedule F Order seeks to exclude these positions from mandatory competitive hiring processes designed to protect a merit-based civil service system. Schedule F Order §§ 2-3 (reinstating Executive Order 13957 §§ 3-4 in relevant part).

47. The Schedule F Order also purports to except positions in this new schedule from the civil service protections applicable to adverse actions "set forth in chapter 75 of title 5, United States Code." Schedule F Order §§ 2-3; (reinstating Executive Order 13957 § 1 in relevant part).

48. The Schedule F Order instructs the OPM Director to "rescind all changes made by the final rule of April 9, 2024, 'Upholding Civil Service Protections and Merit System Principles,' 89 Fed. Reg. 24982, that impede the purposes of or would otherwise affect the implementation of Executive Order 13957." Schedule F Order § 4.

49. The Schedule F Order then purports to, effective immediately, hold duly promulgated regulations by the Final Rule of April 9, 2024 contained at 5 C.F.R. part 302, subpart F, 5 C.F.R. 210.102(b)(3), and 5 C.F.R. 210.102(b)(4) "inoperative and without effect" until OPM rescinds all parts of the Final Rule that interfere with the Order. Schedule F Order § 4.

50. On January 27, 2025, OPM Acting Director Charles Ezell issued a memorandum to heads and acting heads of departments and agencies regarding the Schedule F Order ("Ezell Memorandum").

51. The Ezell Memorandum acknowledged that the Schedule F Order "broadly directs OPM to rescind" OPM's Final Rule issued April 9, 2024. Ezell Memorandum at 4. It further asserted that the Schedule F Order "directly nullified some portions of that rule." *Id.* OPM therefore instructed agencies, effective immediately, to "disregard the provisions of 5 CFR part 302, subpart F, 5 CFR 210.102(b)(3), and 5 CFR 210.102(b)(4)." *Id.*

52. No notice or opportunity for public comment was given before these regulations were deemed "inoperative and without effect" and before OPM instructed agencies to "disregard [their] provisions."

IV. **AFGE and AFSCME's Representation of Federal Civil Servants**

53. AFGE, on its own and in conjunction with its affiliated councils and locals, represents members and bargaining unit employees in agencies and departments across the federal government for which it has been certified as the exclusive representative pursuant to 5 U.S.C. § 7111.

54. AFSCME, through its affiliated Council 20 and constituent local unions, represents members and bargaining unit employees in agencies and departments across the federal government for which AFSCME's subordinate bodies have been certified as the exclusive representative pursuant to 5 U.S.C. § 7111.

55. Membership in AFGE and AFSCME and is voluntary.

56. The leadership of AFGE and AFSCME are democratically elected by and from their respective members.

57. The activities of AFGE and AFSCME are funded by their respective members through voluntary membership dues.

58. AFGE members who are federal employees work in a wide variety of positions, in

every U.S. state and the District of Columbia, and in agencies including the Environmental Protection Agency, the Department of Labor, the Department of Veterans Affairs, the Social Security Administration, the Department of Defense, and the Department of Homeland Security.

59. AFSCME members who are federal employees work in a wide variety of positions at multiple federal agencies including AmeriCorps, the Department of Agriculture (USDA), the Department of Justice (DOJ), the Federal Aviation Administration (FAA), the Peace Corps, and Voice of America.

60. AFGE's and AFSCME's members include career civil servants in professional roles who perform work that the Schedule F Order and Ezell Memorandum suggest may lead their positions to be deemed policy-related and reclassified, including individuals who participate in agency regulatory, policy, and grant-making processes. Pursuant to 5 C.F.R. part 302, subpart F, these members are entitled to notice and certain procedural protections if the government sought to reclassify them into the excepted service pursuant to the Schedule F Order.

61. AFGE's and AFSCME's members include career civil servants in professional roles who perform work that the Schedule F Order and Ezell Memorandum suggest may lead their positions to be deemed policy-related, including individuals who participate in agency regulatory, policy, and grant-making processes, and who the government may seek to imminently reclassify pursuant to the Schedule F Order, despite the fact that they do not fall within the definitions of "[c]onfidential, policy-determining, policy-making, or policy-advocating" and "[c]onfidential or policy determining" in 5 C.F.R. § 210.102(b)(3) and § 210.102(b)(4).

62. Rescinding 5 C.F.R. part 302, § 210.102(b)(3), and § 210.102(b)(4), as the Schedule F Order purports to do immediately, would directly harm AFGE's and AFSCME's members by stripping them of protections guaranteed by the duly promulgated "Upholding Civil

Service Protections and Merit System Principles" Final Rule without their having had the opportunity to comment on the proposed recission and advocate for continuing these protections.

63. AFGE's and AFSCME's representation of federal civilian employees includes political advocacy and the submission of public comments to agency rulemakings and extends to litigation in court and before the U.S. Federal Labor Relations Authority. AFGE's and AFSCME's representation also includes engaging in collective bargaining with federal agencies and providing representation in binding arbitrations and other matters, including formal discussions and investigative examinations, arising under the Federal Service Labor-Management Relations Statute, 5 U.S.C. Ch. 71.

64. AFGE's representation of federal civilian employees also includes litigation before agencies including the United States Merit Systems Protection Board, the United States Equal Employment Opportunity Commission, and the United States Office of Special Counsel.

65. By rescinding the protections contained in the "Upholding Civil Service Protections and Merit System Principles" Final Rule without notice and comment, Defendants impair the ability of AFGE and AFSCME to perform one of their core services for their members: participating in the regulatory process and sharing the views of the union and its members on the legality, consequences, and propriety of such a change.

66. The government's recission of the protections contained in the Final Rule without notice and comment impairs another core service that AFGE and AFSCME perform on behalf of their members: counseling them on workplace issues and advocating on their behalf before administrative agencies. Without the required notice guaranteed to its members by the Final Rule about proposed reclassifications, AFGE and AFSCME are deprived of information they would use to counsel and represent their members.

67. AFGE, through its staff, regularly advises its affiliates on how they can assist AFGE members in exercising their civil service protections, including their adverse action rights. AFGE has faced increased questions from its affiliates and members about the impact of the Schedule F Order. The government's recission of 5 C.F.R. part 302, subpart F without notice and comment eliminates members' ability to appeal certain reclassifications into the excepted service, thereby impairing one of AFGE's core services: counseling affiliates on helping members exercise their rights. Additionally, the recission of 5 C.F.R. § 210.102(b)(3) and § 210.102(b)(4) increases the likelihood that members would be reclassified to positions that purportedly lack rights to challenge adverse actions, further impeding AFGE's core services.

68. The recission of 5 C.F.R. § 210.102(b)(3) and § 210.102(b)(4) without notice and comment increases the likelihood that AFGE and AFSCME members who are career federal civil servants will be classified to a new excepted service schedule. Pursuant to Section 5(e) of the amended Executive Order 13957 reinstated by the Schedule F Order, agencies will be "expeditiously petition[ing]" the Federal Labor Relations Authority to remove members of this new excepted service schedule from AFGE and AFSCME bargaining units. AFGE and AFSCME have statutory obligations to represent their bargaining unit employees, and these fact-intensive proceedings before the FLRA will require a substantial expenditure of the unions' time and resources. Furthermore, if these proceedings result in members who currently pay voluntary dues through payroll deduction being removed from AFGE and AFSCME bargaining units, AFGE and AFSCME will lose revenue that is used to further their missions.

69. AFGE, AFSCME, and their constituent local unions must be prepared to respond to members' questions and concerns about the Schedule F Order and how it will affect federal employees' rights and employment conditions going forward. As such, AFGE and AFSCME are

being forced to expend resources to begin creating guidance for their affiliates and members about the Order, including its purported rescission of existing protections.

70. Without the guaranteed notice and protections for career employees that the Schedule F Order purports to rescind, AFGE and AFSCME are being forced to divert their resources to determining which members are likely to be reclassified so that they can fulfill their statutory obligation to represent their bargaining unit employees and advocate on their behalf. This requires AFGE and AFSCME staff to spend time and resources contacting affiliates to discern members' duties and positions and determining how to best protect their rights.

71. Efforts to counteract the harm from the Schedule F Order is diverting AFGE and AFSCME's employees and resources from being otherwise used to further their mission by organizing and representing employees, negotiating with employers, and advocating for improved employment conditions.

## **Count I**

*Procedural Violation of the Administrative Procedure Act*
(Against Defendants Ezell and OPM)

72. Plaintiffs reallege and incorporate Paragraphs 1 through 71.

73. The Administrative Procedure Act provides a cause of action for parties adversely affected or aggrieved by agency action to obtain judicial review. 5 U.S.C. §§ 702-704.

74. The OPM Director, who promulgated the "Upholding Civil Service Protections and Merit Systems Principles" Final Rule in 2024, is expressly subject to the Administrative Procedure Act's procedural requirements contained in 5 U.S.C. § 553(b), (c), and (d) when exercising his functions assigned by statute. 5 U.S.C. §§ 1103, 1105.

75. The Administrative Procedure Act requires agencies to publish "notice of proposed rule making" in the Federal Register and to "give interested persons an opportunity to participate

in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b), (c).

76. These procedures are designed "(1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005).

77. These requirements extend not only to the promulgation of new rules, but also to rescinding or amending rules. 5 U.S.C. § 551(5); see *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (explaining that the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance.")

78. Furthermore, orders that amount to "an order delaying the rule's effective date . . . are tantamount to amending or revoking a rule." *Clean Air Council v. Pruitt*, 862 F.3d 1, 6 (D.C. Cir. 2017).

79. The OPM Director therefore violates the Administrative Procedure Act by holding "inoperative or without effect" and instructing agencies to "disregard"—effectively rescinding—regulations duly promulgated through notice and comment.

80. By ordering OPM to hold "inoperative and without effect" 5 C.F.R. part 302, subpart F, 5 C.F.R. 210.102(b)(3), and 5 C.F.R. 210.102(b)(4), without undergoing notice and comment, President Trump's Schedule F Order purports to unlawfully rescind duly promulgated regulations that are in effect in violation of the APA.

81. Had the purported rescission of 5 C.F.R. part 302, subpart F, 5 C.F.R. 210.102(b)(3), and 5 C.F.R. 210.102(b)(4) been the subject of advance publication and notice-and-

comment rulemaking under the APA, Plaintiffs would have submitted comments in support of maintaining these regulatory provisions.

82. The APA instructs that a reviewing court shall "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

83. The purported rescission of 5 C.F.R. part 302, subpart F, 5 C.F.R. 210.102(b)(3), and 5 C.F.R. 210.102(b)(4) without adhering to the procedural requirements of 5 U.S.C. § 553(b) and (c) violates the Administrative Procedure Act. It is therefore unlawful and should be set aside.

## Count II

*Ultra Vires* – Violation of 5 U.S.C. § 553
(Against All Defendants)

84. Plaintiffs reallege and incorporate Paragraphs 1 through 83.

85. As the Schedule F Order acknowledges, OPM must engage in rulemaking to rescind or amend its existing regulations, including those promulgated by OPM in its legislative 2024 Final Rule, "Upholding Civil Service Protections and Merit System Principles." See Schedule F Order § 4.

86. Defendants lack authority to circumvent the APA's notice-and-comment requirements for rescinding or revoking existing regulations by asserting that regulations promulgated by OPM are "held inoperative and without effect," Schedule F Order § 4, or that the regulations have been "directly nullified" by the Order, Ezell Memorandum at 4.

87. The purported rescission of 5 C.F.R. part 302, subpart F, 5 C.F.R. 210.102(b)(3), and 5 C.F.R. 210.102(b)(4) without allowing for notice and comment as required by the APA, 5 U.S.C. § 553, is therefore unlawful and should be set aside.

**Relief Requested**

**WHEREFORE**, Plaintiffs pray that this Honorable Court enter an ORDER:

A. Declaring that the final sentence of Section 4 of the Schedule F Order violates the Administrative Procedure Act and that 5 C.F.R. part 302, subpart F, 5 C.F.R. 210.102(b)(3), and 5 C.F.R. 210.102(b)(4) remain operative and in effect unless and until Defendants rescind those provisions in compliance with the notice-and-comment requirements contained in the Administrative Procedure Act;

B. Enjoining the Defendants from enforcing the final sentence of Section 4 of the Schedule F Order without first complying with the notice-and-comment requirements contained in the Administrative Procedure Act;

C. Requiring Defendants to enforce 5 C.F.R. part 302, subpart F, 5 C.F.R. 210.102(b)(3), and 5 C.F.R. 210.102(b)(4) unless and until they are rescinded after providing notice and the opportunity for comment in compliance with the Administrative Procedure Act;

D. Granting Plaintiffs' attorney's fees and costs; and

E. Granting such other relief as this Court may deem just and proper.

Respectfully submitted,

Date: January 29, 2025

/s/ *Abigail V. Carter*
Abigail V. Carter (DC Bar ID: 1671394)
J. Alexander Rowell (DC Bar ID: 1780007)
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W. Suite 1000
Washington, D.C. 20005
(202) 842-2600
(202) 842-1888 (fax)
acarter@bredhoff.com
arowell@bredhoff.com

Elena Goldstein*
Mark B. Samburg (DC Bar ID: 1018533)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
 (202) 448-9090
 (202) 796-4426 (fax)
egoldstein@democracyforward.org
msamburg@democracyforward.org

**Pro hac vice* application forthcoming
*Counsel for Plaintiffs AFGE and AFSCME*

Rushab B. Sanghvi (DC Bar ID: 1012814)
Andres M. Grajales (DC Bar ID: 476894)
American Federation of
Government Employees, AFL-CIO
80 F Street, NW
Washington, DC 20001
(202) 639-6426
SanghR@afge.org
Grajaa@afge.org

*Counsel for Plaintiff American Federation of Government Employees (AFGE)*


Teague P. Paterson (DC Bar ID: 144528)
Matthew S. Blumin (DC Bar ID: 1007008)

American Federation of State, County, and
Municipal Employees, AFL-CIO
1101 17th Street N.W. Suite 900
Washington, DC 20036
(202) 775-5900
(202) 452-0556 (fax)
tpaterson@afscme.org
mblumin@afscme.org


*Counsel for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*