# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00264 |

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**Table of Contents**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

    I.   Statutory Framework .................................................................................... 3

        A.   The Competitive and Excepted Service ............................................. 3

        B.   The President and OPM's Authority over the Federal Workforce ........................... 4

        C.   The Statutory Basis for Policy/Career Designations ........................ 5

    II.  Factual and Procedural Background .......................................................... 6

        A.   The Prior Executive Orders and Regulations .................................. 6

        B.   The 2025 Policy/Career Order and OPM Guidance ....................... 8

        C.   This Lawsuit ...................................................................................... 9

LEGAL STANDARDS ...................................................................................................... 10

ARGUMENT .................................................................................................................... 10

    I.   This Court Should Dismiss for Lack of Jurisdiction ............................... 10

        A. Plaintiff Lacks Standing ................................................................... 10

        B.   This Suit is Not Ripe for Adjudication ............................................ 14

    II.  Plaintiff's APA and Ultra Vires Claims are Barred ................................. 16

        A.   APA Review is Barred Here for Lack of Final Agency Action .............. 16

        B.   Ultra Vires Is Not Cognizable Here ................................................. 18

    III.  The President Lawfully Rendered Inoperative the Prior Regulations .............. 20

        A.   Congress Did Not Require Notice and Comment by the President ...................... 20

        B.   The APA Exempts Personnel Rules from Notice and Comment ....................... 22

CONCLUSION .................................................................................................................. 23

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967) ...............................................................................................17

*Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell,*
No. 25-cv-10276-GAO, 2025 WL 470459 (D. Mass. Feb. 12, 2025) ..................... 15, 16

*Am. Tort Reform Ass'n v. OSHA,*
738 F.3d 387 (D.C. Cir. 2013) ...............................................................................17

*American School of Magnetic Healing v. McAnnulty,*
187 U.S. 94 (1902) .................................................................................................21

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.,*
698 F.3d 171 (4th Cir. 2012) ..................................................................................24

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.,*
801 F. Supp. 2d 383 (D. Md. 2011) ........................................................................24

*Ariz. Christian Sch. Tuition Org. v. Winn,*
563 U.S. 125 (2011) ...............................................................................................13

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015) ...............................................................................................22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................................................................12

*AT&T Corp. v. Iowa Utils. Bd.,*
525 U.S. 366 (1999) ...............................................................................................17

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.,*
502 U.S. 32 (1991) .................................................................................................21

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................................12

*Bennett v. Spear,*
520 U.S. 154 (1997) ...............................................................................................19

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ........................................................................................... 13, 14

*Doe 2 v. Trump*,
    319 F. Supp. 3d 539 (D.D.C. 2018) ...................................................................22

*FCC v. Fox Television Stations*,
    556 U.S. 502 (2009) ..........................................................................................22

*\*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ................................................................... 13, 14, 15, 16

*\*Fed. Express Corp. v. U.S. Dep't of Com.*,
    39 F.4th 756 (D.C. Cir. 2022) ...................................................................20, 22

*\*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ....................................................................................passim

*Griffith v. Fed. Labor Relations Auth.*,
    842 F.2d 487 (D.C. Cir. 1988) .........................................................................20

*Humana of S.C., Inc. v. Califano*,
    590 F.2d 1070 (D.C. Cir. 1978) .......................................................................25

*Lepre v. Dep't of Labor*,
    275 F.3d 59 (D.C. Cir. 2001) ...........................................................................21

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ..........................................................................................22

*\*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................13, 14, 16

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ............................................................................................13

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
    538 U.S. 803 (2003) ..........................................................................................17

*Nat'l Treasury Emps. Union ("NTEU") v. Helfer*,
    53 F.3d 1289 (D.C. Cir. 1995) ...........................................................................5

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010) .......................................................................22

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ............................................................................................18

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ...................................................................20, 21

*OPM v. AFGE,*
No. 24A904, —S.Ct.—, 2025 WL 1035208, at *1 (Apr. 8, 2025) ..................................14

*Perez v. Mortg. Bankers Ass'n,*
575 U.S. 92 (2015) ................................................................................................ 23, 24

*Safe Streets Alliance v. Hickenlooper,*
859 F.3d 865 (10th Cir. 2017) ....................................................................................21

*Schroer v. Billington,*
525 F. Supp. 2d 58 (D.D.C. 2007) ............................................................................20

*Sierra Club v. EPA,*
754 F.3d 995 (D.C. Cir. 2014) ...................................................................................16

*Sierra Club v. EPA,*
873 F.3d 946 (D.C. Cir. 2017) ...................................................................................24

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ...................................................................................................13

*Stewart v. Smith,*
673 F.2d 485 (D.C. Cir. 1982) ...................................................................................25

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) .............................................................................................13, 16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
551 U.S. 308 (2007) ...................................................................................................12

*Texas v. United States,*
523 U.S. 296 (1998) ...................................................................................................17

*Tootle v. Sec'y of Navy,*
446 F.3d 167 (D.C. Cir. 2006) ...................................................................................12

*U.S. Telecom Ass'n v. F.C.C.,*
359 F.3d 554 (D.C. Cir. 2004) ...................................................................................24

*VanderKam v. VanderKam,*
776 F.3d 883 (D.C. Cir. 2015) ...................................................................................18

*Verizon Commc'ns v. FCC,*
535 U.S. 467 (2002) ...................................................................................................18

## STATUTES

5 U.S.C. § 551 ................................................................................................ 23, 24

5 U.S.C. § 551 ............................................................................................................19

5 U.S.C. § 553 ............................................................................................................24

5 U.S.C. § 553 ............................................................................................................11

5 U.S.C. § 704 ......................................................................................................18, 23

5 U.S.C. § 1103 ........................................................................................................6, 7

5 U.S.C. § 1104 ..........................................................................................................24

5 U.S.C. § 2102 ............................................................................................................5

5 U.S.C. § 2102 ............................................................................................................5

5 U.S.C. § 3302 ............................................................................................................6

5 U.S.C. § 3302 ............................................................................................................7

5 U.S.C. § 3304 ............................................................................................................5

5 U.S.C. §§ 1103 ........................................................................................................25

5 U.S.C. §§ 1302 ................................................................................................9, 10, 24

5 U.S.C. §§ 3301 ............................................................................................19, 20, 23

5 U.S.C. §§ 3301 ........................................................................................................23

## RULES

Fed. R. Civ. P. 12 ......................................................................................................12

## REGULATIONS

5 C.F.R. § 210.102 ..............................................................................................9, 11, 24

5 C.F.R. § 212.401 ........................................................................................................8

5 C.F.R. part 302, subpart F ................................................................................9, 11, 24

5 C.F.R. § 302.601 ........................................................................................................8

5 C.F.R. § 302.602 ........................................................................................................8

5 C.F.R. § 302.603 ........................................................................................................8

Upholding Civil Service Protections and Merit System Principles,
   89 Fed. Reg. 24,982 (Apr. 9, 2024) .................................................................................9

Excepting Administrative Law Judges from the Competitive Service,
   83 Fed. Reg. (July 10, 2018) ........................................................................................7

**ADMINISTRATIVE AUTHORITIES**

Recruiting and Hiring Students and Recent Graduates,
   Exec. Order No. 13,562, 75 Fed. Reg. 82,585 (Dec. 27, 2010) ............................7

Excepting Administrative Law Judges from the Competitive Service,
   Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018) ............................7

Creating Schedule F in the Excepted Service,
   Exec. Order No. 13,957, 85 Fed. Reg. 67,631 (Oct. 26, 2020) ............................8

Protecting the Federal Workforce,
   Exec. Order No. 14,003, 86 Fed. Reg. 7231 (Jan. 22, 2021) ............................ 8, 9

Restoring Accountability to Policy Influencing Positions Within the Federal Workforce,
   Exec. Order No. 14,171, 90 Fed. Reg. 8625 (Jan. 20, 2025)........................ 3, 4, 10

**OTHER AUTHORITIES**

OPM,
   *Guidance on Implementing President Trump's Executive Order Titled, "Restoring*
   *Accountability To Policy-Influencing Positions Within the Federal Workforce,"*
   https://www.opm.gov/media/sqfnpy4n/opm-memorandum-re-schedule-policy-career-
   guidance-01-27-25-final-2.pdf (last visited Apr. 22, 2025).............................................. *passim*

Samuel L. Bray, *The System of Equitable Remedies*,
   63 UCLA L. Rev. 530 (2016) ....................................................................................17

## INTRODUCTION

Upon his reelection, President Trump set to work to transform the federal workforce. Among other things, he issued directives to require a return to in-person work, reform the federal hiring process, and, as relevant here, restore accountability for federal workers who have policy-influencing authority. Animating these and other critical reforms is the recognition that the federal workforce must be streamlined to be more efficient and better serve the American people.

Executive Order 14171, titled "Restoring Accountability to Policy Influencing Positions Within the Federal Workforce" ("Policy/Career Order"), directed the Office of Personnel Management ("OPM") to begin a process that will culminate in a choice by the President. By statute, Congress has delegated the President the authority to "except[]from the competitive service [a position] because of its confidential, policy-determining, policy-making, or policy-advocating character." 5 U.S.C. § 2302(a)(2)(B)(i); *accord id.* § 7511(b)(2)(A). The President will decide whether to move some positions into that statutory category, to be titled "Schedule Policy/Career." Through the Policy/Career Order, the President requested information from various agencies about what positions may qualify. He also provided guidance to assist agencies during their review. Finally, the President rendered inoperative several regulations previously promulgated pursuant to delegated Presidential authority. OPM later issued a memorandum informing agencies about the President's actions and providing agencies guidance on the positions that may ultimately qualify.

Two AFL-CIO affiliated labor unions (collectively "Plaintiff"), immediately brought suit. Plaintiff alleges that the President's actions, and OPM's acknowledgement of the President's actions in a memorandum, violate the notice and comment requirements in the Administrative Procedure Act ("APA"). Plaintiff's attack fails for a variety of reasons.

First, Plaintiff lacks present standing to sue. It has sued with a speculative, non-cognizable injury, while challenging actions that have not yet occurred. Moreover, Plaintiff is merely a third-party

1

bystander to the federal employment relationship, a category that rarely has standing. Plaintiff also does not allege that any position has yet been moved into Schedule Policy/Career, and indeed, it is as of now unclear what positions would be placed in such a schedule. As a result, the Court does not have jurisdiction over this presently hypothetical attack on anticipated future events.

Second, Plaintiff seeks to bring suit under two authorities, both of which fail here: the APA and the "ultra vires" doctrine. The former requires a final agency action and none is present. The latter is an extraordinary vehicle that requires an unambiguous lack of authority by the executive official sued, alongside a specific, direct, and immediate impact on the challenging party. But neither of those requirements are met here—Plaintiff's lack of authority challenge is not so clear as to support an ultra vires attack and Plaintiff is not specifically, directly, and immediately impacted.

Finally, even if the Court were to reach the merits, Plaintiff's suit should not prevail. The Supreme Court has held that the typical requirements of the Administrative Procedure Act ("APA") do not apply to the President when he acts directly, as he did here. Even if they did, the APA excepts "personnel" related rules from notice and comment, with a specific exception to the exception under Sections 1103 and 1105 for the Director of OPM and certain rules proposed by OPM. At bottom, Plaintiff asks this Court to impose a notice-and-comment requirement barred twice over by the relevant caselaw.[1]

---

[1] The Local Rules provide that in a case "involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court . . . simultaneously with the filing of a dispositive motion." LCvR 7(n)(1). The apparent logic of the rule, however, presupposes that the motion implicates the contents of the administrative record. Indeed, in directing counsel to file an appendix of administrative record material in addition to the certified list, the rule specifically instructs counsel not to "burden the appendix with excess material from the administrative record that does not relate to the issues raised in the motion or opposition." *Id*; *see also* LCvR 7(n) cmt.1 ("This rule is intended to assist the Court in cases involving a voluminous record . . . by providing the Court with copies of relevant portions of the record relied upon in any dispositive motion." (emphasis added)). Defendant's motion, which raises only jurisdictional and other threshold defenses based on the content of the complaint, does not depend upon the contents of any administrative record.

## BACKGROUND

**I.     Statutory Framework**

**A.  The Competitive and Excepted Service**

Subject to various exceptions, "civil service employees in the executive branch of the federal government, other than those in the Senior Executive Service, are either in the 'competitive service' or the 'excepted service.'" *Nat'l Treasury Emps. Union ("NTEU") v. Helfer*, 53 F.3d 1289, 1290 (D.C. Cir. 1995); *see* 5 U.S.C. § 2102. Most federal employees are in the competitive service, but roughly one third are in the excepted service. *See* Congressional Research Service, Categories of Federal Civil Service Employment: A Snapshot 4, R45635 (March 26, 2019).[2] The "excepted service" includes "positions which are specifically excepted from the competitive service by or under statute." 5 U.S.C. § 2102(a)(1)(A) (emphasis added).

Positions in the competitive service are subject to specific provisions for hiring and removal not applicable to the excepted service. *See, e.g.*, 5 U.S.C. § 3304. While federal employees generally are entitled to many substantive and procedural protections related to their employment, *e.g.*, *id.* § 2302(a)(2)(B), those restrictions and procedural protections do not apply to the same extent to all those in the excepted service, *compare id.* § 7511(a)(1)(A) ("employee" entitled to certain rights includes individual in competitive service with one-year continuous service), *with id.* § 7511(a)(1)(C) ("employee" entitled to those same rights includes individual in excepted service with two years continuous service).

As relevant here, certain otherwise-required procedures for taking adverse personnel actions do not apply where a position is "excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character." *Id.* § 2302(a)(2)(B). As established

---

[2] Available at https://fas.org/sgp/crs/misc/R45635.pdf (last visited Apr. 22, 2025).

by Congress, a position may be "determined to be of a confidential, policy-determining, policy-making or policy-advocating character" by "the President," by "the Office of Personnel Management," ("OPM") or by "the head of an agency." *Id.* § 7511(b)(2).

### B. The President and OPM's Authority over the Federal Workforce

Article II of the U.S. Constitution vests the entire executive power in the President. In addition, Congress has, by statute, provided the President with substantial authority over the federal workforce. Indeed, numerous provisions provide that "[t]he President may prescribe rules governing" a variety of Executive Branch personnel issues, including exceptions from the competitive service. 5 U.S.C. § 3302; *see, e.g., id.* §§ 2301 (administering applicability of the merits systems principles), 2302 (excepting positions from prohibited personnel practice requirement), 2951 (directing reports from appointing authorities), 3132 (providing applicability of and exclusions for the Senior Executive Service), 3301 (developing rules for admission into the civil service), 3304 (creating competitive examination procedures), 3321 (designing probationary status directions), 7301 ("The President may prescribe regulations for the conduct of employees in the executive branch."), 7511(b)(2) (designating positions to be of a confidential, policy-determining, policy-making or policy-advocating character). The breadth and depth of Congressional delegation to the President in this sphere cannot be overstated. Time and again, the President is directly empowered, by statute, to make rules and develop his Executive Branch personnel policies as he sees fit.

Congress has also provided OPM with various responsibilities in this sphere. After all, the President could not manage the vast Executive Branch workforce on his own. Thus, the OPM Director is tasked with "executing, administering, and enforcing —. . . the civil service rules and regulations of the President and the Office and the laws governing the civil service." 5 U.S.C. § 1103(a)(5)(A). He is similarly tasked with "aiding the President, as the President may request, in preparing such civil service rules as the President prescribes, and otherwise advising the President on

actions which may be taken to promote an efficient civil service and a systematic application of the merit system principles." *Id.* § 1103(a)(7). And for the competitive service specifically: "[t]he Office of Personnel Management shall aid the President, as he may request, in preparing the rules he prescribes under this title for the administration of the competitive service." *Id.* § 1301.

OPM need not only assist as the President personally exercises his statutory powers. Thus, "the President may delegate, in whole or in part, authority for personnel management functions, including authority for competitive examinations, to the Director of the Office of Personnel Management." *Id.* § 1104(a)(1). And in certain instances Congress provided OPM its own authorities. *See, e.g.*, *id.* §§ 5107, 5112 (providing OPM with the authority to set standards for pay scales); *id.* § 5405 (allowing OPM to promulgate regulations governing the Human Capital Performance Fund).

When "any rule or regulation [] is proposed by [OPM]" "[t]he Director shall publish in the Federal Register general notice of [the] rule or regulation." *Id.* § 1103(b)(1). The Director is also more generally subject to certain requirements in the APA. *Id.* § 1105. However, outside the Director and rules "proposed" by OPM, the scheme excepts personnel rules and regulations from notice and comment requirements. *Id.* § 553(a)(1), (2).

### C. The Statutory Basis for Policy/Career Designations

As discussed, the President has been directly vested with the ability to except positions from the competitive service. Section 3302 provides that the "President may prescribe rules governing the competitive service" and that such rules "shall provide, as nearly as conditions of good administration warrant," for "necessary exceptions of positions from the competitive service." 5 U.S.C. § 3302(1). For decades, the Executive Branch has managed the federal civil service by creating such exceptions. *See, e.g.*, Exec. Order No. 13,843, Excepting Administrative Law Judges from the Competitive Service, 83 Fed. Reg. 32, 755 (July 10, 2018); Exec. Order No. 13,562, Recruiting and Hiring Students and Recent Graduates, 75 Fed. Reg. 82,585 (December 27, 2010). Such exceptions enable a more nimble

workforce and make the Executive Branch more responsive to the will of the people.

In addition, Congress specified a particular type of position—one determined to be of a confidential, policy-determining, policy-making or policy-advocating character—as qualifying for exclusion. Congress directed that a "position [that] has been determined to be of a confidential, policy-determining, policy-making or policy-advocating character by" "the President," OPM, or the head of an agency, would be exempt from various procedures governing removal, certain suspensions, reductions in pay, and other related actions. *Id.* §§ 7511–14. Positions in this category, the subject of this suit, will be referred to as "policy-influencing positions."

All told, policy-influencing positions were recognized by Congress as requiring special attention and Presidential control—including exemptions from otherwise-cumbersome and time-consuming procedures where the agency wishes to remove such employees. It ensured a broad space for Presidential rulemaking to designate such positions and a high degree of accountability for these sensitive positions.

## II.    Factual and Procedural Background

### A.  The Prior Executive Orders and Regulations

On October 21, 2020, the President invoked his authority under Sections 3301, 3302, and 7511 and created a new schedule "excepted from the competitive service" for "career positions in the Federal service of a confidential, policy-determining, policy-making, or policy-advocating character." Exec. Order No. 13,957 §§ 1, 4, 85 Fed. Reg. 67,631 (Oct. 26, 2020). Under this Executive Order, each agency was ordered that it must submit to OPM the specific positions it proposed should be added to this new schedule. *Id.* § 5(a)(i). The Director of OPM was directed to review those submissions and determine which, if any, should in fact be excepted. *Id.* § 5(d).

Upon taking office, President Biden swiftly issued Executive Order 14003 revoking the prior order and instructing agencies to "immediately suspend, revise, or rescind proposed actions, decisions,

petitions, rules, regulations or other guidance pursuant to, or to effectuate, [the prior order]." Exec.

Order 14003 § 2, 86 Fed. Reg. 7231 (Jan. 22, 2021). OPM then took additional action. In 2023, it

issued a notice of proposed rulemaking titled "Upholding Civil Service Protections and Merit System

Principles." 88 FR 63862 (Sept. 18, 2023). It sought to implement, by rule: (1) retention by employees

of adverse action protections when their positions are held to be policy-influencing; (2) a definition of

confidential, policy-determining, policy-making, or policy-advocating" and "confidential or policy-

determining" as covering only "noncareer, political appointments"; and (3) "specific additional

procedures that apply when moving positions from the competitive service to the excepted service,

or from one excepted service schedule to another," especially when such movements would affect

adverse action coverage. *Id.* at 63862. OPM subsequently issued a final rule. 89 Fed. Reg. 24982 (April

9, 2024).

Several regulatory provisions brought into effect by the final rule are relevant to the present

litigation. First, OPM implemented its proposed definitions for policy-influencing positions.

> *Confidential, policy-determining, policy-making, or policy-advocating* means of a character exclusively associated with a noncareer political appointment that is identified by its close working relationship with the President, head of an agency, or other key appointed officials who are responsible for furthering the goals and policies of the President and the Administration, and that carries no expectation of continued employment beyond the presidential administration during which the appointment occurred.

> *Confidential or policy determining* means of a character exclusively associated with a noncareer political appointment that is identified by its close working relationship with the President, head of an agency, or other key appointed officials who are responsible for furthering the goals and policies of the President and the Administration, and that carries no expectation of continued employment beyond the presidential administration during which the appointment occurred.

5 C.F.R. § 210.102(b)(3), (4) (citing as statutory authority 5 U.S.C. §§ 1302, 3301, and 3302).

Next, OPM added "Subpart F" titled "Moving Employees and Positions into and Within the

Excepted Service," to the relevant regulatory scheme. 5 C.F.R. part 302, subpart F (citing as statutory

authority 5 U.S.C. §§ 1302, 3301, 3302, 8151). The new subpart established various procedural

requirements that Executive Branch officials must follow before moving positions into a new excepted service schedule, or individual employees with accrued civil service protections into a position without such protections. *Id.* §§ 302.601, 302.602. Subpart F also provided certain appeal rights to the Merit Systems Protection Board ("MSPB") for employees whose positions were involuntarily moved into an excepted service schedule. *Id.* § 302.603. Specifically, it allowed appeals challenging a failure to follow certain requirements established in Subpart F, the voluntariness of moving to a new position in the excepted service, and the "eliminat[ion of] competitive status or any procedural and appeal rights that had previously accrued." *Id.*

The regulations provided other protections to employees related to being moved to a different schedule. *See, e.g.*, *id.* § 212.401 (establishing that "[a]n employee who was in the competitive service and had competitive status" at the time of an involuntary move into the excepted service "remains in the competitive service for the purposes of status and any accrued adverse action protections"). Plaintiff does not allege these regulations are inactive.

## B. The 2025 Policy/Career Order and OPM Guidance

When President Trump again assumed office in January 2025, he issued a new executive order, the Policy/Career Order, revoking President Biden's order and reinstating his earlier order with some modifications. The President established a new excepted service schedule for positions of a confidential, policy-determining, policy-making, or policy-advocating character that are not normally subject to change as a result of a Presidential transition—tracking the language used by Congress. Policy/Career Order, Exec. Order No. 14,171 § 3, 90 Fed. Reg. 8625 (Jan. 20, 2025). The President directed that the Director, in consultation with the Executive Office of the President, provide additional guidance to agencies about what positions might qualify, in addition to the President's own guidance. *Id.* § 5. He established that agencies would recommend positions that may be suitable for the new schedule to OPM, and that the Director would then decide what positions OPM would

recommend to the President. *Id.* §§ 3(e), 5. Recognizing that 5 C.F.R. § 210.102(b)(3), (4) and 5 C.F.R. part 302, subpart F were issued with delegated Presidential authority, he reasserted his statutory prerogative and rendered those regulations inoperative. *Id.* § 4. Lastly, the President affirmed that "[e]mployees in or applicants for Schedule Policy/Career positions are not required to personally or politically support the current President or the policies of the current administration." *Id.* § 3(f)(ii).

On January 27, OPM issued guidance pursuant to the President's directive. OPM, *Guidance on Implementing President Trump's Executive Order titled, "Restoring Accountability To Policy-Influencing Positions Within the Federal Workforce"* ("January 27 Memorandum), (attached as Ex. A).[3] For the most part, the January 27 Memorandum consists of guidance on positions that may qualify for Schedule Policy/Career and the procedure for future agency recommendations. *Id.* at 1–5. OPM also noted to agencies that the President, through the Policy/Career Order, had personally rendered certain regulations inoperative and without effect. *Id.* at 5–6. Lastly, OPM explained that, as the Policy/Career Order requires, "agencies will be forbidden from making Schedule Policy/Career appointments based on political affiliation." *Id.* at 5-6. The appendix of the memorandum includes a helpful consolidated version of the reinstated prior order as modified by the Policy/Career Order. *See id.* Appendix 1 ("Consolidated Order").

### C.  This Lawsuit

On January 29, 2025, Plaintiff, a labor union representing federal employees filed this suit. Compl., ECF No. 1. Plaintiff brings two claims. First, against OPM and Acting Director Ezell, to bar the agency from recognizing that 5 C.F.R. part 302, subpart F, 5 C.F.R. § 210.102(b)(3), and 5 C.F.R. § 210.102(b)(4) are inoperative, because of an alleged failure to follow notice and comment procedures in 5 U.S.C. § 553(b) and (c). Compl. ¶¶ 72–83. Second, against all defendants, seeking to bar the

---

[3]    Located at https://www.opm.gov/media/sqfnpy4n/opm-memorandum-re-schedule-policy-career-guidance-01-27-25-final-2.pdf (last visited Apr. 22, 2025).

operation of the Policy/Career Order on the identified regulations, without notice and comment procedures. Compl. ¶¶ 84–87. Defendants now move to dismiss the complaint.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court considers "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Factual allegations are considered true, but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

### THE DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED

#### I.    This Court Should Dismiss for Lack of Jurisdiction

The Court lacks jurisdiction over this matter for two reasons. First, Plaintiff presently lacks standing to bring this suit. Second, because the claims are not ripe.

#### A. Plaintiff Lacks Standing

Federal courts are vested "with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). A court may only "redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009)). One part of that requirement is the need for a plaintiff to demonstrate standing to sue.

To establish standing, a plaintiff must show: (i) an "injury in fact," that is, a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (ii) a causal connection between the injury and the defendant's conduct such that the injury is "fairly . . . traceable to the challenged action"; and (iii) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). Plaintiff "bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

The alleged injury in fact cannot be "speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). If the injury has not materialized, it must be "certainly impending," and "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). In addition, "standing is not dispensed in gross," and "'plaintiffs must demonstrate standing for each claim they press' against each defendant, 'and for each form of relief.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted).

Plaintiff alludes to several theories to support standing: (1) the Policy/Career Order and OPM Memorandum "may lead their [members'] positions to be deemed policy-related" which "increases the likelihood that [Plaintiff's] members" will be designated by the President, Compl. ¶¶ 61–62, 68; (2) increased likelihood of losing dues paying members, *id.* ¶ 68; (3) diversion of time and resources

to questions, administrative proceedings, and determining members likely to be designated, *id.* ¶¶ 66–71; and (4) impairment of Plaintiff's ability to participate in the regulatory process and share views, *id.* ¶¶ 65–66. None are sufficient.

At base, Plaintiff's theories fail for a global reason. "[W]hen (as here) a plaintiff challenges the government's unlawful regulation (or lack of regulation) of someone else, standing is not precluded, but it is ordinarily substantially more difficult to establish." *All. for Hippocratic Med.*, 602 U.S. at 382 (internal quotation marks and citation omitted). Plaintiff challenges the change to regulations that may eventually affect individual federal employees whose positions are determined to be policy-influencing positions—but Plaintiff is not an employee. Necessarily, in our system of limited Article III review, that sets a high hurdle to demonstrate standing. *See id.* ("The injury in fact requirement prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders." (internal quotation marks and citation omitted)).

The first possible theory is based on a purported possible future injury of reclassification of federal employees using terms like "may" and "increases the likelihood." Compl. ¶¶ 61–62, 68. This is a quintessential "speculative" assertion that is not "certainly impending." *All. for Hippocratic Med.*, 602 U.S. at 381; *Clapper*, 568 U.S. at 409. Indeed, neither is that speculative future possibility "fairly . . . traceable to the challenged action." *Lujan*, 504 U.S. at 560–61. The claims brought here solely challenge the lack of notice and comment for the regulatory actions. Plaintiff attempts to draw a line from the lack of notice and comment, to the possibility of comment, to the potential designation of positions, to the lack of effect of only the few regulations rendered inoperative by the President, to then some uncertain final harm for Plaintiff. Such an "attenuated link" is not cognizable. *All. for Hippocratic Med.*, 602 U.S. at 383. The Supreme Court suggested as much in its recent grant of a stay in a case raising similar standing issues. *See OPM v. AFGE*, No. 24A904, —S.Ct.—, 2025 WL 1035208, at *1 (Apr. 8, 2025) (citing *Clapper*).

12

Plaintiff's second theory fails for much the same reason as the first. Plaintiff must engage in substantial speculation: that some number of its specific members will be removed from a bargaining unit because of the lack of operative effect of the specific regulations challenged. Not only is that purported future action not certainly impending, it is also far too attenuated. The claims here challenge the lack of notice of comment for the change to the identified regulations. It is a long and thin chain indeed that traces the lack of notice and comment for the actions to a final removal of bargaining unit employees. As another court held in a similar context, "a loss of membership dues to the unions is not certain" and not cognizable. *Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, No. 25-cv-10276-GAO, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025).

Third, Plaintiff's diversion of resources theory is foreclosed by the recent *Alliance for Hippocratic Medicine* case. There, the Supreme Court confronted a theory essentially identical to Plaintiff's: that the government had "impaired [plaintiffs'] ability to provide services and achieve their organizational missions." 602 U.S. at 394 (internal quotation marks and citation omitted). Indeed, those plaintiffs claimed that they "ha[d] standing not based on their mere disagreement with [the government's] policies, but based on their incurring costs to oppose [the government's] actions." *Id.* They paid for studies to "better inform their members and the public." *Id.* They "expend[ed] considerable time, energy, and resources" on the administrative process as well as public advocacy. *Id.* (internal quotations marks and citation omitted). And, as a result, they spent substantial sums "to the detriment of other spending priorities." *Id.*

Those are exactly the kinds of harms cited by Plaintiff here. But the Court, after teeing up the same theory Plaintiff relies on, flatly rejected it. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* To succeed on a diversion of resources theory, Plaintiff must explain how "actions directly affected and interfered with [its] core

13

business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* at 395. That is an extreme showing, and it is "an unusual case" that successfully relies on such a theory. *See id.* at 396. But Plaintiff simply argues that it has focused its work on the subject matters related to this lawsuit—reclassification of employees—and in no way explains how its core business is put at risk. *See Ezell*, 2025 WL 470459, at *2 (rejecting a similar diversionary theory for a challenge to the Deferred Resignation Program). Moreover, it fails to explain how drawn-out notice and comment process would not cause precisely the same purported diversionary harms it asserts flows from the lack of notice and comment.

Next, Plaintiff complains about an inability to participate in notice and comment. But, of course, "being denied the right to comment" is a procedural injury that does not confer standing. *See Sierra Club v. EPA*, 754 F.3d 995, 1002 (D.C. Cir. 2014). "Deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). And because Plaintiff has "failed to establish that they will likely suffer a substantive injury, their claimed procedural injury . . . necessarily fails." *See Sierra Club*, 754 F.3d at 1002.

Finally, even putting aside Plaintiff's individual theories, its entire pathway to standing is speculative because the Policy/Career Order directed that "[t]he Director of the Office of Personnel Management (Director) shall promptly amend the Civil Service Regulations" to remove the regulations that Plaintiff identifies. Policy/Career Order § 4. All else aside, it is fatally speculative that notice and comment will not be followed prior to the OPM's own amendment which would eliminate any purported harm "traceable to the challenged action." *See Lujan*, 504 U.S. at 560–61

In sum, the theories of harm alluded to in Plaintiff's complaint are all insufficient. Having failed to meet its burden to demonstrate standing, its complaint should be dismissed.

### B. This Suit is Not Ripe for Adjudication

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies.'" *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up). It is "drawn both from Article III . . . and from prudential reasons." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808 (citation omitted).

The test involves two parts: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties" of withholding review. *Abbott Labs*, 387 U.S. at 149. An agency's mere opinion about the meaning of a law is quintessentially not fit for review. *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387 (D.C. Cir. 2013). And review is properly withheld when the administrative work "has [not yet] been formalized and its effects [not yet] felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148–49.

The paradigmatic unripe case is one that challenges a preliminary agency policy that has not been—and may never be—enforced against the plaintiff. *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 386 (1999). And Courts have evinced "a greater concern about ripeness" when "asked to give equitable remedies," like those sought here. Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 549 n. 85 (2016). In sum, "federal courts normally do not entertain pre-enforcement challenges to agency rules and policy statements." *AT&T Corp.*, 525 U.S. at 386. Critically, an agency action may even be final for purposes of the APA, but not ripe for review. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 810. Plaintiff's claims are unripe.

Plaintiff alleges that the Policy/Career Order and OPM each eliminated certain regulations without required notice and comment. However, this challenge is ultimately unripe for two reasons.

First, no position has been moved to the excepted service. It is therefore entirely unclear what, if any, effect the change in regulations would have on employees subject to the changes. Meanwhile, the Supreme Court has cautioned against "taking a challenge . . . [before] being presented with" an administrative action applied to an individual. *See Verizon Comm'ns v. FCC*, 535 U.S. 467, 524 (2002). No hardship has flown to a potentially affected individual, nor has a "concrete setting" been laid. *See VanderKam v. VanderKam*, 776 F.3d 883, 888 (D.C. Cir. 2015). Moreover, the Policy/Career Order directed OPM to amend the relevant regulations independent of the President's own actions. Policy/Career Order § 4. This upcoming effort, combined with the lack of present effect or hardship, makes notice-and-comment claims particularly unfit for resolution.

## II.    Plaintiff's APA and Ultra Vires Claims are Barred

Plaintiff brings a combination of APA and ultra vires claims to challenge the Policy/Career Order and January 27 Memorandum. But the claims are fundamentally barred by the doctrines underlying the authorities they invoke. APA claims require a final agency action, but no such action is challenged here. And ultra vires claims are a narrow and limited doctrine of last resort and Plaintiff does not satisfy the strict test for their invocation.

### A.    APA Review is Barred Here for Lack of Final Agency Action

"[F]inal agency action" is a requirement for APA review. 5 U.S.C. § 704. Agency action requires a specific "rule, order, license, sanction, relief, or the equivalent[.]" *Id.* § 551(13). It must be a "discrete" act, and a plaintiff may not bring a "broad programmatic attack." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Meanwhile, the Supreme Court has laid out a two part test for finality, including that (1) "the action must mark the consummation of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and (2) "the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]"

16

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." *Id.*

Plaintiff alleges that Director Ezell and OPM have taken final agency action by rescinding several of the 2024 regulations without notice and comment. But they have done no such thing. The January 27 Memorandum states that "[i]n [the Policy/Career Order], President Trump used his authority under the Constitution and 5 U.S.C. §§ 3301, 3302, and 7511 to directly nullify these regulations." January 27 Memorandum at 4. OPM does not contend that it has taken any action to rescind these regulations, but instead acknowledges the President's own actions. Consequently, Plaintiff does not challenge a "rule, order, license, sanction, relief, or the equivalent" by Director Ezell and OPM. 5 U.S.C. § 551(13). Indeed, the memorandum is definitionally interlocutory in nature, providing guidance to agencies in advance of a future recommendation. January 27 Memorandum at 3–4. As the memorandum explains "[a] new executive order will subsequently effectuate the transfers into Schedule Policy/Career," "OPM retains discretion to determine which categories and types of positions it will recommend," and "the President will make the final determination about which positions to transfer." *Id.* This preliminary memorandum is the beginning, not the consummation, of the decisionmaking process.

Nor do any rights or obligations flow from OPM's statement. Instead, any challenge must be against the President who took any final action. And even though final action by the President cannot be challenged under the APA, *infra* Part III.A., the Supreme Court held in *Franklin v. Massachusetts* that when the President is statutorily empowered to make a final decision, an agency action leading up to that decision is nonfinal. 505 U.S. 798, 798–801 (1992). There, the Secretary of Commerce was statutorily directed to provide the President a report, but the President was independently empowered to alter and amend the conclusion at his discretion. *Id.* at 798–800. Accordingly, the Court could "review the APA claims" as to the President but not by the pre-Presidential agency actor. *Id.* And

here, like there, the President is independently empowered to make the decision with OPM merely providing a recommendation. *See* 5 U.S.C. §§ 3301, 3302, 7511(b). That the agency's action was nonfinal, and the President's action is immune from APA review, does not transform the agency's nonfinal action into a reviewable one. *Id.* at 798–801.

### B. Ultra Vires Is Not Cognizable Here

Perhaps recognizing that there is no final agency action to challenge, Plaintiff labels a claim that the President failed to follow notice and comment procedures as "ultra vires." Presumably, it seeks to invoke this Court's inherent equitable powers to provide a cause of action. But that narrow form of relief is not available to Plaintiff here.

Ultra vires review is a "doctrine of last resort," *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007), and the equivalent of "a Hail Mary pass—and in court as in football, the attempt rarely succeeds," *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). More specifically, ultra vires review of agency action is only available when an agency's error is "patently a misconstruction of the [statute;]" "when the agency has disregarded a specific and unambiguous statutory directive[;]" or "when the agency has violated some specific command of a statute." *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988) (internal citations and quotations omitted). "Garden-variety errors of law or fact are not enough." *Id.* In other words, the ultra vires doctrine is "extremely limited" in "scope" and covers situations where the invocation of authority not granted is "so extreme that one may view it as jurisdictional or nearly so." *Id.*

Plaintiff's notice and comment challenge is entirely outside of these bounds. It is definitionally a claim under the APA that must be subject to the APA's requirements of a final agency action. *Supra* Part II.A. Ultra vires is not simply a free workaround for the APA's threshold demands. *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) ("FedEx's effort to dilute ultra vires review to the functional equivalent of the very APA action that Congress prohibited defies precedent

and logic.") To hold otherwise would be to allow any plaintiff to bypass the rules governing APA review, but still use the APA's substance. And, in this particular posture, it would be especially egregious. The Supreme Court has already held that the APA's restrictions do not apply to actions of the President. *Franklin*, 505 U.S. at 800–01. Application of the ultra vires vehicle with the APA's substance to the President's action would overturn that clear holding.

Furthermore, ultra vires relief developed as an equitable remedy to prevent the government from unlawfully acting upon a person—i.e., to prevent a certain restriction or enforcement action from taking place. *See, e.g.*, *American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110–11 (1902). It is not a tool for those who may be incidentally affected later, empowering them to reach upstream and proactively combat an alleged wrong happening to another. *See Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 902–04 (10th Cir. 2017). But that is precisely what each of Plaintiff's claims here attempts to do. The actions Plaintiff complains about affect hypothetical employees in positions that may be designated as policy-influencing positions. But the hypothetical employees would be the direct objects of any purportedly unlawful action. Plaintiff here may be incidentally harmed, but that is it. And this Court's inherent equitable powers do not provide a cause of action for Plaintiff to seek immediate redress of that sort of removed harm.

Even setting all those issues aside, Plaintiff is additionally barred because an ultra vires claim is unavailable where an alternative remedial path may exist through which a plaintiff may pursue the challenge. *See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (non-statutory review is available only when a party would be "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its statutory rights"); *Lepre v. Dep't of Labor*, 275 F.3d 59, 72 (D.C. Cir. 2001) (a "critical" requirement for ultra vires review is "the lack of any alternative means of judicial review for the plaintiffs"); *see also Nyunt*, 589 F.3d at 449. If there is a final agency action, Plaintiff may seek to challenge it under the APA. Ultra vires review is not merely a convenient means to attack nonfinal

19

action. *See Fed. Express Corp.*, 39 F.4th at 764. "The power of federal courts of equity to enjoin unlawful executive action is subject to . . . implied statutory limitations." *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–27 (2015). The existence of other pathways bars all of Plaintiff's claims, even if this plaintiff cannot bring them in exactly the manner that it wishes, or someone else must do so.

Finally, because it is ultimately the President's action that Plaintiff attacks, the well-trod bar on injunctive or declaratory relief against the President is a hurdle that cannot be overcome. *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief." (citation omitted)). The President therefore is immune from injunctive relief, and the Court should, at the very least, dismiss him as a defendant. *See Doe 2 v. Trump*, 319 F. Supp. 3d 539 (D.D.C. 2018) (dismissing the President "as a party to this case").

## III.    The President Lawfully Rendered Inoperative the Prior Regulations

The President's decision to render inoperative the prior regulations is lawful twice over. First, because the APA, by its own text, does not apply to actions taken by the President. Second, because the APA explicitly carves out personnel rules from notice and comment.

### A.    Congress Did Not Require Notice and Comment by the President

First, the President lawfully acted on the prior regulations without notice and comment because the APA does not apply to his actions. The APA, "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations*, 556 U.S. 502, 513 (2009). The APA's "Section 553 provides generally that an agency must publish notice of a proposed rulemaking in the Federal Register and afford 'interested persons an opportunity to participate.'" *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993) (quoting 5 U.S.C. § 553(b), (c)). The notice and comment requirements located in that section are the default for "'legislative' or 'substantive' rules." *Id.* at 196. And the APA states "formulating, amending, or repealing a rule" are all synonymous.

20

5 U.S.C. § 551(5); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). Repeals or amendments are thus subject to the same procedures as formulations.

Plaintiff's challenge flounders because the President's actions, just like his formulation of a rule, is not subject to Section 553. Indeed, the Supreme Court has consistently held that "the President is not an 'agency' under that A[PA]." *Dalton*, 511 U.S. at 476. As a result, the APA, which makes "final *agency* action for which there is no other adequate remedy in a court []subject to judicial review," is inapplicable to the President. 5 U.S.C. § 704 (emphasis added). This conclusion flows from "respect for the separation of powers and the unique constitutional position of the President." *Franklin*, 505 U.S. at 800–01. Indeed, the Court in *Frankin* directly confronted what would happen if a statute invested the President with the authority to take an administrative action—there to make certain calculations and a final apportionment from the census. *Id.* at 800. The Court concluded that the action was simply not subject to the requirements in the APA including, for example, arbitrary and capricious requirements. *Id.* at 800–01.

Plaintiff's challenge turns entirely on Section 553's requirements. But the APA cleaves the President from those strictures. And the President exercised his own statutory authority. *See* 5 U.S.C. §§ 3301(1), 3302(1), 7511(b)(2)(A). So there is no Section 553 constraint on that action. Indeed, the Supreme Court has consistently forbidden application of Section 553 to administrative actions that the APA excepts. *See, e.g.*, *Perez*, 575 U.S. at 101.

Plaintiff's attack on the January 27 Memorandum is similarly lacking. OPM purported to exercise no authority and indeed took no action through that memorandum. It merely stated that "[i]n [the Policy/Career Order], President Trump used his authority under the Constitution and 5 U.S.C. §§ 3301 and 3302 to directly nullify these regulations." January 27 Memorandum at 4. OPM does not contend that it has taken any action to rescind these regulations, but instead acknowledges the President's own actions. Even if OPM had acted, which it affirmatively did not, it would stand in the

shoes of the President who directly acted. *See Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*, 801 F. Supp. 2d 383, 403 (D. Md. 2011) ("[T]he State Department and Assistant Secretary were acting on behalf of the President, and therefore their actions are not reviewable under the APA"), *aff'd*, 698 F.3d 171 (4th Cir. 2012); *cf. U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 565 (D.C. Cir. 2004) ("When an agency delegates authority to its subordinate, responsibility—and thus accountability—clearly remain with the federal agency.").

Nor does it matter that the regulations were promulgated by notice and comment. It is well established that "an agency's decision to embrace additional process" cannot bind the agency to additional process. *Sierra Club v. EPA*, 873 F.3d 946, 952 (D.C. Cir. 2017). OPM's own authority to issue these regulations derived directly from the President's authority. 5 U.S.C. § 1104(a)(1) ("[T]he President may delegate, in whole or in part, authority for personnel management functions, . . . to the Director of [OPM]."). Specifically, OPM cited as statutory authority 5 U.S.C. §§ 1302, 3301, 3302, and 8151. 5 C.F.R. § 210.102(b)(3), (4); 5 C.F.R. part 302, subpart F. But only Sections 3301 and 3302 cover the subject-matter of the regulations, and both invest power in the President, who may then delegate the power to OPM. Here, the President reasserted the authority he previously delegated. At that time, Section 553 did not apply because it would not apply to the President's formulation of a rule. *Franklin*, 505 U.S. at 800–01; *see* 5 U.S.C. § 551(5). Plaintiff's attempt to subject him to Section 553 of the APA accordingly fails. "[I]mposing such an obligation is the responsibility of Congress or the administrative agencies, not []courts." *See Perez*, 575 U.S. at 102.

### B.  The APA Exempts Personnel Rules from Notice and Comment

Even setting aside the overall inapplicability of APA procedure to the President, there is another bar here. Certain critical executive domains like "a military or foreign affairs function of the United States" and, as here, "a matter relating to agency management or personnel," are excepted from notice and comment. 5 U.S.C. § 553(a)(1), (2). Congress thus "cut[] a wide swath through the

safeguards generally imposed on agency action." *Humana of S.C., Inc. v. Califano*, 590 F.2d 1070, 1082 (D.C. Cir. 1978). The actions challenged here are all at the core of management and personnel—they deal with the regulations governing civil service employment—and therefore the exception applies. *See Stewart v. Smith*, 673 F.2d 485, 498–99 (D.C. Cir. 1982).

Plaintiff will likely respond that an exception to the exception applies. Ultimately, Congress brought some personnel rules within the scope of notice and comment. Congress directs that "[t]he *Director* [*of OPM*] shall publish in the Federal Register general notice of any rule or regulation which is proposed by the Office" and "in the exercise of the functions assigned under this chapter, *the Director* shall be subject to subsections (b), (c), and (d) of section 553 of this title, notwithstanding subsection (a)." 5 U.S.C. § § 1103(b)(1), 1105 (emphasis added). Thus, in certain circumstances, the Director's actions are subject to the section 553 requirements in whole or part.

Plaintiff, however, does not challenge a "rule or regulation which is *proposed by* [OPM]" nor an action by "the Director in the exercise of the functions assigned under th[e] chapter." *See id.* (emphasis added). Instead, the President directly, and without relying on the Director, acted on the regulations. The President, not the Director of OPM, rendered the regulations inoperative and the exception to the exception is inapplicable. Notice and comment was accordingly not required.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: April 22, 2025                    Respectfully submitted,

                                         ERIC J. HAMILTON
                                         Deputy Assistant Attorney General

                                         CHRISTOPHER R. HALL
                                         Assistant Branch Director

23

*/s/ Jason Altabet*

Jason Altabet
(MD Bar No. 2211280012)
Kevin K. Bell
(GA Bar No. 967210)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 305-0727
E-mail: Jason.K.Altabet2@usdoj.gov

*Counsel for the United States*

24